IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANDY C.[1], | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:22-CV-15 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Andy C. ("Andy") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§1381–1381f. Andy alleges that the Administrative Law Judge ("ALJ") erred by failing to properly weigh the physician opinions relating to his mental impairments and by failing to explain his specific functional limitations. I conclude that substantial evidence does not support the Commissioner's decision. Accordingly, I **GRANT in part** Andy's Motion for Summary Judgment (Dkt. 18), **DENY** the Commissioner's Motion for Summary Judgment (Dkt. 22), and **REMAND** this case for further administrative proceedings consistent with this opinion.

## STANDARD OF REVIEW

This court's review is limited to determining whether substantial evidence supports the

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

Commissioner's conclusion that Andy failed to demonstrate that he was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion fails to explain his analysis of Andy's alleged symptoms and limitations and the basis for his decision to discount the three mental health professional opinions in the record.

## CLAIM HISTORY

Andy filed for SSI in September 2019, claiming that his disability began on September 26, 2019. R. 10. The state agency denied Andy's applications at the initial and reconsideration levels of administrative review. R. 88–119. On March 19, 2021, ALJ Paul Barker, Jr., held a hearing to consider Andy's claim. R. 38–87. Counsel represented Andy at the hearing, which included testimony from vocational expert Heili Randall. On April 19, 2021, the ALJ entered his decision analyzing Andy's claims under the familiar five-step process[3] and denying his claim for benefits. R. 10–21.

The ALJ found that Andy suffered from the severe impairments of bipolar disorder, generalized anxiety disorder and substance abuse, reportedly in remission. R. 12. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 13–14. The ALJ concluded that Andy retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

the following non-exertional limitations: understand, remember and carry out simple tasks but not at an assembly line rate; make simple work-related decisions; have occasional work-related interactions with co-workers and supervisors, and rare work-related interactions with the general public; and have occasional changes in the work setting. R. 14.

The ALJ determined that Andy has no past relevant work, and that he can perform jobs that exist in significant numbers in the national economy, such as marker, photocopy machine operator, and office helper. R. 20. Thus, the ALJ determined that Andy is not disabled. Id.  Andy appealed the ALJ's decision and the Appeals Council denied his request for review on November 16, 2021. R. 1–6.

## ANALYSIS

### I.   Medical History

Andy was 41 years old on his alleged onset date, had at least a high school degree and lived on his own.  Andy has a history of mental health issues for which he receives medication and counseling. Andy also has a history of substance abuse, and was prescribed medication-assisted treatment for substance abuse in 2019–2020.

Andy underwent an involuntary psychiatric hospitalization in September 2018.  He began follow up counseling services with New River Valley Community Services ("NRVCS") after his psychiatric hospitalization. He alleges disability as of a year later, September 2019. At that time, he was diagnosed with bipolar disorder, generalized anxiety disorder, and psychoactive substance abuse with intoxication.

Andy saw psychiatric nurse practitioner Karen Scalf-Benham and case manager Bret Nicholson, M.A., with NRVCS regularly from early 2019 through the date of the ALJ's opinion. Andy consistently reported depression, poor ability to concentrate or enjoy most activities,

sadness, fatigue, anxiety, chronic worrying, and social anxiety. R. 750, 782. His mental status exams reflected tense and rigid appearance; guarded, restless behavior; appropriate orientation; loud or pressured speech; depressed, anxious mood; constricted, flat affect; and appropriate thought process, insight and judgment. R. 751, 783. Andy was treated with medications and counseling.

Andy lost both his father and his life-partner within a month of each other in December 2019. R. 839. He reported having panic episodes several times a week. R. 839. His mental status exams reflected tearful, restless behavior; pressured, soft speech; anxious mood; constricted affect; perseverative thought processes with loose associations and flight of ideas; and blaming insight. R. 840. Ms. Scalf-Benham continued Andy's medications and encouraged grief psychotherapy. R. 842.

From February through December 2020, Andy continued to report depression with mood dysregulation, poor ability to concentrate, persistent sadness and fatigue, anxiety and chronic worrying, panic episodes 2–3 times a week, and social anxiety in public. R. 894, 930, 954, 975, 1005, 1042. His mental status examinations reflected tense, rigid appearance; guarded, distracted, restless behavior; pressured, loud speech; and anxious mood. R. 895, 932, 938, 955–56, 976–77, 1006, 1043.

On April 8, 2020, Ms. Scalf-Benham signed a report with Andy's Case Manager Bret Nicholson, M.A., describing his mental status as easily agitated and verbally aggressive with others when challenged; pressured and loud speech; unkempt, tense and rigid appearance; depressed, blunted, flat affect with sadness and fatigue. R. 855–57. Ms. Scalf-Benham noted that Andy reported anxiety and chronic worrying; impairment with short-term and long-term memory that are confirmed by his family members; social anxiety in public; ongoing paranoia; panic

5

episodes; confusion with instructions and poor ability to concentrate. R. 858. Ms. Scalf-Benham documented that Andy's flight of ideas had been observed by NRVCS staff. She also noted that Andy has a history of poor judgment as evidenced by his past incarceration, but it had improved with medications and sobriety, and that he currently had a blaming insight. Id.

## II. Medical Opinions

On February 12, 2020, state agency psychiatrist Nicole Sampson, Ph.D., reviewed Andy's records and determined that he had moderate limitations with the ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from his symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; get along with coworkers or peers without distracting them; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. R. 96–98.

Dr. Sampson explained that Andy's bipolar and depression would cause some problems with complex and detailed tasks, but evidence suggests that he can perform simple 1–3 step tasks consistently; he can maintain at least 1 hour intervals of concentration; he may be distracted by others and his own impairments daily and weekly, but not to a degree that would prevent all forms of work; and his impairments may interfere somewhat with his ability to maintain appropriate social interactions, but evidence suggests he can do so on an as-needed basis with the public and co-workers. Id.

On May 22, 2020, state agency medical source Stephanie Fearer, Ph.D., reviewed Andy's records and assessed similar moderate limitations as Dr. Sampson; however, she found that

Andy's ability to interact appropriately with the general public was markedly limited. R. 113–14. Dr. Fearer explained that Andy reported problems getting along with others due to anxiety and experiencing panic attacks 2–3 times per week. She noted that he is socially withdrawn and third parties reported that Andy has extreme rage at times. She concluded that Andy is unable to interact appropriately with the general public, however it is expected that by December 2022, he would be able to interact appropriately with supervisors and co-workers with only occasional difficulty. R. 114. Dr. Fearer also determined that Andy is capable of understanding and remembering simple, one and two-step instructions, work-like procedures and locations; and he would be able to carry out simple instructions with occasional interruption to his ability to maintain sustained concentration, maintain regular attendance, and complete a normal workday/week. Id.

On March 1, 2021, Ms. Scalf-Benham, N.P., completed a mental impairment questionnaire and noted that she has treated Andy for around two years, and he was diagnosed with bipolar disorder, generalized anxiety disorder, PTSD, and substance abuse disorder, in remission. R. 1033. Ms. Scalf-Benham determined that Andy would have moderate impairments with carrying out short and simple instructions, maintaining regular attendance and being punctual, being aware of normal hazards, and adhering to basic standards of cleanliness. R. 1034. He would have marked impairments with remembering work-like procedures, understanding and remembering short and simple instructions, paying attention for two-hour segments, making simple work-related decisions, performing at a consistent pace, requesting assistance, interacting appropriately with the general public and maintaining socially appropriate behavior. Id.

Ms. Scalf-Benham found that Andy would have extreme limitations with sustaining an ordinary routine without special supervision; working in coordination with or proximity with

others without being distracted; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers; dealing with normal work stress and responding appropriately to changes in the work setting; understanding, remembering and carrying out detailed instructions; setting realistic goals; dealing with the stress of semiskilled and skilled work; and traveling in unfamiliar places and using public transportation. Id.  Ms. Scalf-Benham determined that Andy's impairments caused marked restrictions with his activities of daily living, maintaining social functioning; concentration, persistence or pace; and caused three repeated episodes of decompensation within a 12-month period. R. 1035.  She also found that he would be absent from work more than four days per month.

### III.   ALJ Decision

Andy asserts that the ALJ's decision fails to properly explain his treatment of the medical opinions and is not supported by substantial evidence.  Reviewing the ALJ's decision under the substantial evidence standard, I find that the ALJ's analysis of Andy's alleged symptoms and limitations and the ALJ's explanation for discounting the medical opinions are inadequate and do not provide the logical bridge required between the evidence and the ALJ's decision.

The ALJ set forth Andy's treatment history in summary fashion in his decision. R. 15–17. The ALJ noted Andy's report that he has bipolar disorder; has trouble getting out of bed; can be paranoid and will not leave the house at times; has little motivation; and used drugs in the past. R. 15. He noted that Andy testified that he takes mood stabilizers and talks to a therapist, which helps his symptoms "somewhat." He testified that he takes his dog for walks, plays the guitar, watches television, can use Google on his smartphone, and microwave meals. He testified that he can go out alone but does not like to be around a lot of people.  He alleged difficulty with concentrating, completing tasks, understanding and following instructions, handling stress or

8

changes and memory. Id. After reviewing the medical records, the ALJ found that the evidence only partially supports Andy's alleged loss of functioning. The ALJ provided three reasons to discount Andy's alleged symptoms: 1) Andy's daily activities are not as limited as one would expect, given that Andy can go out alone, drive, prepare simple meals, do laundry, clean and mow the yard; 2) Ms. Scalf-Benham stated in a record dated April 8, 2020, that his condition improved with medications and sobriety; and 3) treatment records reflect that Andy has "psychiatrically stabilized" after his losses in December 2019. R. 17.

### a. Subjective Complaints

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added). "At this step, objective evidence is *not* required to find the claimant disabled." Arakas v. Comm'r., 983 F.3d 83, 95 (4th Cir. 2020) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the

9

ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Here, the ALJ evaluated Andy's symptoms and determined that "the evidence only partially supports the alleged loss of functioning," and provided the three reasons set forth above in support of this conclusion. R. 17. The reasons provided by the ALJ to discredit Andy's alleged limitations are not supported by the record. Rather, the ALJ's analysis appears to misconstrue and/or inflate statements in Andy's treatment records to support the ALJ's RFC analysis.

First, the ALJ relies upon Ms. Scalf-Benham's finding that Andy's condition "improved with medications and sobriety," in an April 8, 2020 mental status evaluation form. R. 17. The quote, which is found under the "Judgement" subheading of Andy's "Current Mental Status," states in full, "Client has a history of poor judgment as evidenced by past incarceration. This has improved with medications and sobriety to the present. Current insight is blaming." R. 858. The ALJ's decision inflates this partial statement from Ms. Scalf-Benham's assessment of Andy's judgment to represent an improvement in Andy's overall mental health. Other portions of the April 8, 2020 mental status evaluation reflect that Andy had "severe issues with self-isolation daily, particularly since death of his partner and father within the last 3 months;" he was easily agitated and verbally aggressive with others when challenged; his speech was pressured and loud; his appearance was unkempt, tense and rigid; he was depressed with a blunted, flat affect; sadness and fatigue are present; he reported anxiety and chronic worrying about finances; he reported impairment in his immediate, short-term memory and long-term memory issues that are confirmed by his family members; staff observed thought blocking and flight of ideas. R. 856–

58. The ALJ's presentation of this quote as evidence that Ms. Scalf-Benham determined that Andy's general mental health improved with medications and sobriety is, at best, inaccurate.

Additionally, the ALJ's decision repeatedly states that Ms. Scalf-Benham found Andy to be "psychiatrically stable." R. 16–18. The corresponding records cited by the ALJ reflect that Andy had ongoing mood dysregulation; was not actively suicidal, homicidal or reporting psychotic symptoms; he did not appear to be overtly psychotic; he was compliant on meds and was "stable psychiatrically," he was in no imminent danger to himself or others and did not meet the criteria for involuntary hospitalization. R. 976, 1006, 1043. The ALJ failed to acknowledge that these same records reflect Andy's mental status as having a tense/rigid appearance; guarded, distracted and restless behavior; loud speech; anxious mood; loose associations and flight of ideas with his thought process; and blaming and limited insight. R. 977, 1007, 1044. Thus, when considered in full, the records do not support the ALJ's reliance on the term "psychiatrically stable" as a generalized finding that Andy's mental health conditions did not impose limitations.

Finally, the ALJ provided no explanation as to how the daily activities listed, such as driving, preparing simple meals or mowing the yard, conflict with Andy's testimony that he has difficulty with concentration, completing tasks, understanding and following instructions, handling stress and being around other people. "[T]he ALJ must 'build an accurate and logical bridge from the evidence to his conclusion that the claimant's testimony was not credible'— which the ALJ wholly failed to do here." Brown v. Comm'r, 873 F.3d 251, 269 (4th Cir. 2017) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted)). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record

11

evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

### b. Medical Opinions

The ALJ's analysis of the medical opinions suffers from the same deficiencies. Andy filed his application in September 2019; thus, 20 C.F.R. § 404.1520c governs how the ALJ considered the medical opinions in his case.[4] When making an RFC assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating the persuasiveness of medical opinions, the ALJ will consider five factors: supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict the opinion. The most important factors considered are supportability and consistency.[5] Id. The ALJ is not required to explain the consideration of the other three factors. Green v. Saul, No. 5:20-cv-1301-KDW, 2021 WL 1976378, at *6 (D.S.C. May 18, 2021). However, when "medical opinions or prior administrative medical findings about the same issue are equally well–supported . . . and consistent with the record," the Commissioner will articulate how he considered the following

---

[4] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017.

[5] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

factors: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

The ALJ considered the mental assessments of Drs. Sampson and Fearer, and found them partially persuasive but "not entirely consistent with the evidence as a whole." R. 18. Specifically, the ALJ found it unclear why Dr. Fearer limited Andy to no work with the general public, or why both Drs. Sampson and Fearer limited Andy to one-to-two or one-to-three step tasks when "Andy's recent mental status examinations were generally within normal limits with the exception of a depressed mood and blunted affect." Id. The ALJ noted that Andy processed his grief appropriately; reported only intermittent sadness and fatigue in June and August 2020; and was "psychiatrically stable" in August, October and December 2020. The ALJ did not adopt these recommended restrictions, but instead limited Andy to simple tasks and simple work-related decisions, and rare work-related interactions with the general public. R. 14.

As noted above, the ALJ's reliance on the term "psychiatrically stable" in the records mischaracterizes Andy's overall mental health condition. Andy's mental status examinations consistently reflected not only depressed mood and blunt affect, but also tense, rigid appearance; guarded, distracted, restless behavior; pressured, loud speech; and anxious mood. R. 895, 932, 938, 955–56, 976–77, 1006, 1043. Additionally, the ALJ did not explain how or why Andy's ability to process grief normally undermines his documented long-term issues with concentration, persistence, and social interaction. Overall, the reasons provided by the ALJ to give Drs. Sampson and Fearer's assessments little weight are not "good" or reflective of the evidence in the record.

The ALJ also considered Ms. Scalf-Benham's opinion and found it unpersuasive and unsupported by Ms. Scalf-Benham's own treatment notes. R. 18. The ALJ referenced Andy's

13

"generally unremarkable" mental status examination in September 2019, except for an anxious mood, constricted affect, and restless behavior; an August 2020 note describing him as "psychiatrically stable," with memory and judgment within normal limits; and an October 2020 note finding Andy stable psychiatrically with mild mood dysregulation. The ALJ also noted that "treatment notes indicate" that Ms. Scalf-Benham was assisting Andy with his disability claim and completed the opinion with the input of the eligibility specialist at NRVCS. R. 18. The ALJ thus concluded that the opinion was not based entirely on her objective assessment of Andy's functioning. The ALJ also found that the opinion is not consistent with the evidence of record as a whole, noting that Andy had adequate judgment and has been cooperative, engaged, and talkative in other treatment records. R. 19.

Again, the ALJ's generalized findings that Andy was "psychiatrically stable" and had "unremarkable mental status examinations" are unsupported by the record and insufficient to explain why he rejected Ms. Scalf-Benham's opinion in its entirety, especially when Drs. Sampson and Fearer recommended similar restrictions in the domains of concentration, persistence and pace, and social interaction.

Additionally, there is no indication that Ms. Scalf-Benham's March 1, 2021 mental status questionnaire was completed with the input of an eligibility specialist. Indeed, the record cited by the ALJ in support of this supposition pre-dates Ms. Scalf-Benham's opinion by over a year. R. 946, 1034. See Hall v. Astrue, No. 7:07cv590, 2008 WL 5455720, at *4 (W.D. Va. Dec. 31, 2008) (recommending reversal where the ALJ impermissibly discounted a "treating physician's opinion based on unsupported conjecture" that the physician was biased in his patient's favor), *adopted by* 2009 WL 187984 (W.D. Va. Jan. 23, 2009).

Thus, while the ALJ's decision appears to evaluate the supportability and consistency of the medical opinions and the record, the reasoning provided by the ALJ to discount all three medical opinions and Andy's alleged symptoms is largely unsupported by the record. Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.") (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)).  "The ALJ does not need to discuss every piece of relevant evidence, but he must evaluate the record fairly, and provide enough analysis of the evidence to allow the reviewing court to trace the path of his reasoning."  Susan T. v. Soc. Sec. Admin., No. 5:17cv26, 2018 WL 4655753, at *11 (W.D. Va. Sept. 27, 2018) (internal quotations and citations omitted).

Here, the ALJ's explanation for discounting Andy's symptoms and at least partially rejecting each of the medical opinions is insufficient and is not supported by the totality of the record. I recognize that it is not my function to conduct a blank slate review of the evidence by reweighing conflicting evidence, determining credibility, or substituting my judgment for the ALJ's when "reasonable minds could differ." See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012); Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). In fact, I am precluded from doing so; it is the duty of the ALJ to explain the basis for his opinion. However, the ALJ did not adequately explain his analysis and identify the evidence supporting his RFC assessment such that this Court can determine whether his decision is supported by substantial evidence.

## CONCLUSION

For these reasons set forth above, I **GRANT in part** Andy's motion for summary judgment, **DENY** the Commissioner's motion for summary judgment this case, and **REMAND**

this matter to the Commissioner for additional consideration under sentence four of 42 U.S.C. § 405(g).

                                        Entered:  April 17, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge